**E-FILED**
Monday, 21 May, 2007  01:56:44 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| RELIANCE NATIONAL INSURANCE COMPANY, a corporation, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | No.   97-3289 |
| GREAT LAKES AVIATION, LTD, et al., | ) ) ) | |
| Defendants. | ) | |

## OPINION

RICHARD MILLS, U.S. District Judge:

This case is before the Court on: (I) the motion for partial summary judgment filed by Defendant Rita Winkelmann; and (II) various proofs of claim for the remaining claimants, and objections to those claims.

### I. Background

This case has a lengthy procedural history.  Since the mandate from the Seventh Circuit remanding this action was entered on February 7, 2006, this Court on August 30, 2006 denied the motion of former party Reliance

1

National Insurance Company[1] for leave to file a petition to intervene. Reliance filed a notice of appeal from that judgment. On November 14, 2006, the Seventh Circuit entered an order which provided in pertinent part, "Pursuant to Circuit Rule 33, all proceedings in this appeal are STAYED pending further court order." The case is now properly before this Court.

On June 30, 2006, Rita Winkelmann, the Executrix of the Estate of Laura Brooks, deceased, filed a motion for partial summary judgment, claiming that there are no genuine issues of material fact as to certain issues which are before the Court. Winkelmann alleges that the motion will serve to narrow the disputed issues in this case. She moves for summary judgment under Federal Rule of Civil Procedure 56(a), claiming there are no genuine issues of material fact and judgment should be entered as a matter of law declaring: (1) Neil Reinwald's negligence caused the crash making his estate liable in tort to the Passenger Defendants' representatives; (2) Neil

---

[1]Reliance filed this interpleader action under 28 U.S.C. § 1335, naming as defendants everyone who might have a claim to the $1 million liability insurance policy. After depositing that amount with the court, Reliance was dismissed pursuant to its request.

Reinwald's estate is an "insured" under the Reliance policy; and (3) the only remaining condition each Passenger representative must prove is whether the amount already received does not equal or exceed that claimant's legal entitlement.[2]

On November 19, 1996, United Express Flight 5925, a Beechcraft 1900C, collided with a King Air A90 at Quincy Municipal Airport, near Quincy, Illinois. At the time of the collision, the United flight was completing its landing roll on runway 13, while the King Air was in its takeoff roll on runway 04.[3] The collision occurred on the ground at the intersection of the two runways. The ten passengers and two crew members aboard Flight 5925 and the two occupants aboard the King Air were all

---

[2]Several parties that might otherwise have an interest in responding to Winkelmann's motion have been dismissed from this case. Reliance was dismissed in 1998 soon after depositing the $1 million with the Court. Its recent motion for leave to file a petition to intervene was denied. Joan Reinwald, as personal representative of the estate of Neil Reinwald, deceased, has been terminated from this case. On May 18, 2006, Robert Clarkson and Harvey Imber, the owners of the King Air, were terminated as parties. Any claims of Clarkson and Imber have been assigned to Great Lakes Aviation and Raytheon Aircraft Company.

[3]Great Lakes and Raytheon filed a brief responding to Winkelmann's motion for partial summary judgment. They contend that most of the statements included in Winkelmann's "undisputed material facts" are immaterial, as they do not bear on the sole issue that is the subject of her motion–the Passenger Defendants' burden to establish the liability of the individual owners, Clarkson and Imber.

killed.

In support of her motion, Winkelmann alleges that the investigation ruled out all possible causes of the crash besides pilot error. She notes the following: (1) air traffic controllers were not controlling and were not required to control traffic at the Quincy airport; (2) there were no mechanical malfunctions on either aircraft; (3) the weather was not a factor; and (4) visibility was not a problem. Neil Reinwald was the pilot in command of the King Air. Because the pilots on the United flight had announced their intention to land on runway 13, and also because the inbound aircraft with its landing lights on was clearly visible from the cockpit of the King Air, Reinwald either knew or should have known that a takeoff was too dangerous to attempt when he decided to begin the takeoff roll on runway 04.

Winkelmann further alleges that the King Air's takeoff roll violated the right of way rule set forth in § 91.113(g) of the Federal Aviation Regulations, which entitles landing aircraft and aircraft "on final approach to land" to the "right of way over [all] other aircraft." Neil Reinwald should

4

have elected to delay his takeoff until after the United Express aircraft landed and was safely out of the way.  In choosing to take off when he did, Reinwald was also guilty of careless and reckless operation in violation of § 91.13 of the Federal Aviation Regulations.  The cockpit voice recorder transcript establishes that Reinwald negligently failed to state his intentions or make certain Laura Brooks, who was the other individual on the King Air, responded to the question that Flight 5925 asked approximately one minute before the collision.  The main cause of the crash was Reinwald's negligence in deciding to take off when the United flight was on short final approach to an intersecting runway.

On April 22, 2003, a jury returned a verdict in favor of Rita Winkelmann and against the Estate of Neil Reinwald and Great Lakes Aviation, Ltd. in related state court litigation, finding that Reinwald's negligence was a cause of the crash and allocating 65% of the total causal fault to him.  The jury's verdict was affirmed on appeal.  Winkelmann claims that the state court adjudication binds not only herself and Great Lakes, who were parties to that litigation, but also Great Lakes' privy,

5

Raytheon Aircraft Company, and Winkelmann's privy, the United Express passenger claimants.

On the day of the crash, the King Air was owned by Robert Clarkson and Harvey Imber. Clarkson and Imber were the "named insureds" who purchased liability insurance covering the King Air from Reliance, the same insurance policy that led to this interpleader action. The policy not only covered the "named insureds;" it also covered individuals who were using the aircraft with their "express permission." Neil Reinwald was operating the King Air with their "express permission."

Great Lakes and Raytheon have proffered some additional facts which they allege show that Winkelmann's motion should be denied.[4] They claim that she did not appeal this Court's previous judgment (wherein she was awarded $100,000) and, therefore, is without standing to challenge the Seventh Circuit's mandate.[5] Winkelmann asserts these facts are immaterial

---

[4]The Court will at times refer solely to Great Lakes when discussing filings on behalf of both Great Lakes and Raytheon.

[5]Presumably, the reason that Winkelmann did not appeal the Court's previous judgment is that all of the parties that had filed claims agreed that she was entitled to $100,000 of the interpleader funds, regardless of how the balance was apportioned among the other claimants. In denying Winkelmann's petition for panel rehearing,

6

because they do not bear directly on any of the legal issues raised by the summary judgment motion.

Great Lakes further contends that the Passenger Defendants have previously argued that it was error for this Court to consider findings from the state court litigation in determining the proper distribution of the interpleader funds.  Moreover, there is neither identity of issues nor identity of parties between the state court litigation and this action.  Winkelmann claims that these allegations are immaterial because the facts proving the legal issues raised by the motion for partial summary judgment are undisputed.

Great Lakes and Raytheon next assert that at no time during the pendency of the state court litigation did they stand in privity as required to impose collateral estoppel.  Winkelmann disputes that allegation, contending that Raytheon was party to the settlement agreements with the owners and passengers in the state court proceedings, and has attempted to

---

the Seventh Circuit stated that she could pursue her arguments in the district court on remand.  Accordingly, the Court rejects the argument that Winkelmann lacks standing.

use the contribution judgment order from the state court proceedings to its advantage in this Court.  Great Lakes further contends that at no time during the state court litigation did Winkelmann and the Passenger Defendants stand in privity as is required to impose collateral estoppel. Winkelmann claims this is an immaterial conclusion of law.

## II. Motion For Partial Summary Judgment

Winkelmann states that the uncontested facts on which she relies are supported, in part, by the witness testimony from the trial in the related state court proceeding that arose out of the crash.  Moreover, the National Transportation Safety Board factual findings set forth in its group chair factual reports are admissible.  "The Board does not object to, and there is no statutory bar to, admission in litigation of factual accident reports.  In the case of a major investigation, group chairman factual reports are factual accident reports."  49 C.F.R. § 835.2.

Winkelmann alleges that Neil Reinwald's negligence caused the crash. To state a cause of action for negligence under Illinois law, the facts must "establish the existence of a duty of care owed by the defendant to the

plaintiff, a breach of that duty, and an injury proximately caused by that breach."  <u>Marshall v. Burger King Corp.</u>, 222 Ill.2d 422, 430, 856 N.E.2d 1048, 1053 (2006).  The regulations provide that a pilot in command may not "operate an aircraft in a careless or reckless manner so as to endanger the life or property of another."   14 C.F.R. § 91.13(a).  Winkelmann contends that the totality of the evidence supports the conclusion that the primary cause of the collision was Reinwald's negligence in deciding to take off, when he either knew or should have known that the United flight was on final approach to an intersecting runway.

Next, Winkelmann alleges that Reinwald's estate is an "insured" covered by the Reliance policy.  The policy states in pertinent part, "**Insured** means **you** or any person or organization using or legally responsible for the use of **your aircraft** with **your** express permission."  The policy also states that "the words **you** and **your** mean the person, persons or organization indicated as the named insured on the COVERAGE PAGE."  The cover pages identifies Clarkson and Imber as the named insureds.  Moreover, Winkelmann asserts that the evidence unequivocally establishes

9

that the named insureds gave Reinwald "express permission" to operate the King Air.

Winkelmann contends that the only remaining condition each passenger representative must prove is that the amount already received does not equal or exceed that claimant's legal entitlement.  She notes that the Seventh Circuit has previously observed that "the liability insurer is a surrogate for the tortfeasor whom it has insured;" <u>Reliance Nat'l Insurance Co. v. Great Lakes Aviation, Ltd.</u>, 430 F.3d 412, 415 (7th Cir. 2005); and "the passengers' claim to the money deposited in the district court derives entirely from the allegedly negligent conduct of Reliance's insureds." <u>Id.</u> at 416.

At this stage, therefore, Winkelmann alleges that she and the Passenger Defendants should be required to prove only two elements to establish valid claims: (1) that an insured under the Reliance policy is liable in tort to the claimant; and (2) that the amount the claimant has already received does not equal or exceed that claimant's legal entitlement. Winkelmann further contends that because it is clear, as a matter of law,

10

that an insured under the Reliance policy (Reinwald's estate) is liable in tort to the claimants, the only remaining element left for each Passenger Defendant to prove is that the amount that claimant has already received does not equal or exceed that claimant's legal entitlement.

In its response brief, Great Lakes first alleges that Winkelmann is without standing to seek the relief requested because unlike the Passenger Defendants, she has never raised or preserved any claims against the owners of the King Air.  Great Lakes contends that Winkelmann fully adjudicated her claims in the Circuit Court of St. Clair County, and she did not pursue any claims against the owners under any theory of liability.  Accordingly, Great Lakes asserts that Winkelmann lacks the necessary standing to ask the Court to now determine the owners' liability.

Similarly, Great Lakes notes that Winkelmann did not appeal this Court's order distributing the interpleader funds.  In that order, the Court denied Winkelmann's request that the entire fund be awarded to her but did (upon the stipulation of the parties) award her $100,000, which represented the per-seat liability limit of the Reliance policy.  Great Lakes

claims that because Winkelmann did not appeal, the Seventh Circuit left unaffected this Court's determination that she was entitled to no more than the $100,000 award as limited by the terms of the policy.

Great Lakes contends, therefore, that because Winkelmann did not pursue any claim against the owners and otherwise failed to appeal this Court's determination limiting her total recovery, those issues have been decided and constitute the law of the case. The Court has concluded that Winkelmann has standing to make her claim.

Next, Great Lakes asserts that the Passenger Defendants cannot rely on the state court proceedings to satisfy their burden of proving the owners' liability. Great Lakes notes that the Seventh Circuit stated that "the passengers must prove that the owners were negligent, or otherwise tortiously culpable in some way for the accident." According to Great Lakes, Winkelmann misstates the mandate of the Seventh Circuit as well as the applicability of the doctrine of collateral estoppel in moving for summary judgment. Because the Passenger Defendants have previously admitted that there was neither identity of parties or identity of issues

between the state court proceedings and this interpleader action, Great Lake alleges that the doctrine of collateral estoppel does not apply.  Great Lakes maintains that the Passenger Defendants are bound by their previous judicial admissions.  It disputes Winkelmann's assertion that Raytheon and the Passenger Defendants are "privies" of Great Lakes and Winkelmann, respectively.

Great Lakes next contends that even if there were identity of parties and identity of issues, there is no final judgment binding on the issues remaining on remand sufficient to satisfy the third requirement of collateral estoppel.  Winkelmann did not litigate any claims against the owners in the state court action.  Thus, Great Lakes asserts that she cannot adopt facts from that litigation to now estop the litigation of other such matters. Because Winkelmann has not shown that the issues pending on remand have been adjudicated, Great Lakes asserts that the elements for the assertion of collateral estoppel have not been met.

In her reply brief, Winkelmann contends that the uncontested facts compel the entry of partial summary judgment whether collateral estoppel

13

applies or not.  First, the motion does not seek a judicial determination of the liability of Clarkson and Imber.  Winkelmann claims that the issues on which she sought a ruling involved (1) Neil Reinwald's negligence; (2) whether Reinwald's estate was an "insured" under the Reliance policy; and (3) the only remaining condition each passenger representative must prove is whether the amount already received does not equal or exceed that claimant's entitlement.

Winkelmann notes that Great Lakes labeled the facts on which she based her summary judgment motion as "immaterial."  She alleges that pursuant to Rule 56 of the Federal Rules of Civil Procedure, the failure of Great Lakes (or any other party) to dispute these facts mean that they have been admitted.  Winkelmann disputes Great Lakes' assertion that there is a need for a judicial determination of the liability of the owners of the King Air.  She claims that this assertion finds no support in the language of the Passenger Defendants' settlement agreements or the Seventh Circuit's opinion.  The settlement agreements preserved all passenger claims to the interpleader fund.  Winkelmann alleges that this includes claims based on

14

Neil Reinwald's negligence, since he was a permissive user and insured under the Reliance policy, a fact that no one has contested. She contends that the Passengers' claim to the money deposited with the district court derives entirely from the allegedly negligent conduct of Reliance's insureds.

Winkelmann further alleges that the relief sought has never been "a judicial determination of the liability of the owners." She alleges that the sources of evidence on which she relies are all admissible under Rule 56. As for the prior testimony from state court litigation, Winkelmann asserts that it is offered "wholly independent from any collateral estoppel analysis." In support of her argument, she notes that the Northern District of Illinois has stated, "It is well settled that testimony given at the trial of a different case may be considered on summary judgment." See Sphere Drake Ins., Ltd. v. All American Life Ins. Co., 300 F. Supp.2d 606, 614 (N.D. Ill. 2003).[6] The Fifth Circuit has observed that although summary judgment motions are

---

[6]This case was appealed, and Sphere Drake argued that the district court's statement was erroneous. The Seventh Circuit did not address this specific assertion, concluding that "this testimony does not impact the outcome of our decision, and it is therefore not necessary for us to evaluate Sphere Drake's contention." Sphere Drake Ins. Ltd. v. American General Life Ins. Co., 376 F.3d 664, 670 n.3 (7th Cir. 2004).

typically supported by "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits submitted," pursuant to Rule 56(c), it was not error for the district court to primarily rely on testimony submitted at a prior trial–even though Rule 56 does not expressly address the use of such evidence in granting summary judgment motions. See Kelley v. Price-Macemon, Inc., 992 F.2d 1408, 1415 n.12 (5th Cir. 1993).

The Court agrees that a party can use testimony from related state court litigation in seeking to establish certain facts in support of a summary judgment motion.  Winkelmann is not arguing that collateral estoppel applies and thus certain issues cannot be re-litigated.  Rather, she simply is asserting that various undisputed material facts show that she is entitled to summary judgment as to certain issues.  Of course, the opposing party has an opportunity to come forward with evidence showing that these facts are in dispute and that summary judgment should not be granted.  Most of the facts alleged by Winkelmann in support of her motion for summary judgment have not been disputed.  Accordingly, Winkelmann contends that

the undisputed evidence of Neil Reinwald's liability and his estate's status as an "insured" under the Reliance policy compel the Court to grant summary judgment on these issues.

Winkelmann claims that although it is immaterial, Great Lakes' collateral estoppel argument is without merit.  She alleges that it is wrong because Raytheon was a party to the settlement agreements with the owners and passengers in the state court proceedings.  Winkelmann further asserts that Raytheon is also bound by the state court proceedings in which Reinwald was found to be 65% at fault for the crash, as Raytheon's forces and interests were joined with those of Great Lakes before those proceedings concluded, and they continue to pursue mutual interests in this case.

In any event, Winkelmann maintains that her motion for partial summary judgment does not depend on the applicability of collateral estoppel, because her motion is supported by facts that are unrebutted and uncontested.  Based on these undisputed material facts, Winkelmann seeks the entry of partial summary judgment declaring that (1) Neil Reinwald's negligence caused the crash making his estate liable in tort to the Passenger

Defendants' representatives (including Winkelmann); (2) Reinwald's estate is an "insured" under the Reliance policy; and (3) the only remaining condition each passenger representative must prove is whether the amount already received does not equal or exceed that claimant's legal entitlement.

The Court concludes that Winkelmann is entitled to partial summary judgment on those issues. There is plenty of uncontested evidence which shows that Reinwald's negligence was the primary reason for the collision. The evidence shows that Reinwald was negligent in deciding to take off when he knew or should have known that the United flight was on final approach to the intersecting runway. Great Lakes either admits these facts or contends that they are immaterial. Accordingly, the Court concludes as a matter of law that Reinwald's negligence caused the crash, making his estate liable in tort to the Passenger Defendants (including Winkelmann).

Winkelmann also seeks a ruling declaring that Neil Reinwald's estate is an "insured" under the Reliance policy. The undisputed facts show that the King Air was owned by Robert Clarkson and Harvey Imber, and that Clarkson and Imber were the named insureds who purchased the liability

insurance covering the aircraft from Reliance.  The policy provides that in addition to the "named insureds," individuals operating the aircraft with their express permission were covered under the policy.  Clarkson testified that Reinwald had his express permission to fly the plane.  Great Lakes either admits these facts or claims that they are immaterial.  The Court concludes, therefore, that Neil Reinwald's estate is an "insured" under the Reliance policy.

Next, Winkelmann seeks a ruling as a matter of law declaring that the only remaining condition each passenger must prove is whether the amount already received does not equal or exceed that claimant's legal entitlement. The Seventh Circuit has already stated, "That money is owed to the passengers only if two conditions are satisfied: the owners are liable in tort to the passengers; and the amount the passengers have already received in settlement of their claims does not equal or exceed their legal entitlement." See Reliance Nat'l Insurance Co., 430 F.3d at 416.

### III. Proof of Claim Filed by Great Lakes/Raytheon

Great Lakes and Raytheon allege that they remain claimants to the interpleader fund by virtue of an assignment of rights executed in their favor by Robert Clarkson and Harvey Imber, the owners of the King Air and the named insureds under the Reliance policy that deposited the funds into the Court's registry.  Great Lakes notes that the Seventh Circuit has stated that if the Passenger Defendants are unable to establish they are entitled to the money, then it would go back to Reliance.  Great Lakes points out that Reliance long ago assigned to its insureds, Clarkson and Imber, any right it might have to the money.  Clarkson and Imber have conveyed those rights to Great Lakes and Raytheon, as noted in the minute entry dated May 18, 2006.[7]  Great Lakes seeks the $1 million pursuant to this assignment.

The Seventh Circuit has previously held that Great Lakes and Raytheon were not entitled to the $1 million because contribution is barred under Illinois law in these circumstances.  See Reliance Nat'l Insurance Co., 430 F.3d at 415.  The Seventh Circuit noted that Great Lakes was barred

---

[7]A document signed by Imber and Clarkson on April 21, 2006, and May 4, 2006, respectively, purporting to assign any right to the interpleader funds to Great Lakes and Raytheon was attached as an exhibit to the proof of claim filed by Great Lakes and Raytheon on September 15, 2006.

from seeking the fund via contribution by the Illinois Joint Tortfeasor Contribution Act, which provides that "a tortfeasor who settles with a claimant . . . is not entitled to recover contribution from another tortfeasor whose liability is not extinguished by the settlement." Id. at 415 (quoting 740 ILCS 100/2(e)).  Great Lakes contests the Passenger Defendants' claim by virtue of the assignment from Clarkson and Imber.  If Great Lakes and Raytheon are successful in this regard, they claim that the interpleader funds (less the $100,000 previously awarded to Winkelmann) will escheat to their exclusive benefit.

Winkelmann and the Passenger Defendants have filed a response in opposition to Great Lakes' and Raytheon's proof of claim.  They claim that Great Lakes is trying to indirectly do what it has been barred from doing directly.  The Passenger Defendants note, moreover, that neither Clarkson nor Imber has filed a timely claim to the fund.  Indeed, Clarkson and Imber have not submitted any claim to the interpleader fund in the last few years. A review of the docket report shows that in 1999, Clarkson and Imber sought the $1 million to be used for defending the underlying state court

21

lawsuits.  It does not appear that they have since pursued the interpleader funds.  Clarkson and Imber did not seek any amount of the deposited funds in 2004 when the Court considered how the $1 million should be apportioned.  Accordingly, the Court agrees that Clarkson and Imber abandoned any claim they might have had.

As the Passenger Defendants allege, moreover, it is unclear what claim Clarkson and Imber would have ever had to the interpleader funds. According to the Passenger Defendants, Reliance paid Clarkson and Imber for the loss of their aircraft several years ago.  Any further payment to Clarkson and Imber would appear to constitute unjust enrichment.  As for the argument of Great Lakes and Raytheon that they stand in the owners' shoes to pursue any claims and defenses, it does appear that these parties are indirectly asserting a claim that they have been barred from doing directly.

In any event, Clarkson and Imber have abandoned their argument that the funds should be used for defending the underlying lawsuits.  Great Lakes' current argument seems to be based entirely on the language in the

Seventh Circuit's opinion that the money would go back to Reliance if the Passenger Defendants are unable to establish their entitlement. Because Reliance assigned its right to Clarkson and Imber, who subsequently assigned their right to Great Lakes, the argument is that the money should be awarded to Great Lakes. Like Reliance, however, Clarkson and Imber long ago abandoned any claim to the money. Accordingly, their recent assignment of their rights under the policy to Great Lakes and Raytheon does not give those entities any claim to the interpleader funds.

## IV. CONCLUSION

The Court will DENY the motion of Great Lakes to strike the status report filed by the Passenger Defendants and Rita Winkelmann. The claim of Great Lakes and Raytheon to the interpleader fund will be DENIED. The motion for partial summary judgment filed by Rita Winkelmann will be ALLOWED. The Court holds as a matter of law that (1) Neil Reinwald's negligence caused the crash making his estate liable in tort to the passenger's representatives; (2) Reinwald's estate is an "insured" under the Reliance policy; and (3) the only remaining condition each passenger representative

23

must prove is whether the amount already received does not equal or exceed that claimant's legal entitlement.

The Passenger Defendants and Winkelmann have also filed proof of claims, to which Great Lakes and Raytheon have filed objections.  In light of the Court's other rulings, the Passenger Defendants and Winkelmann are entitled to the interpleader funds as long as "the amount the passengers have already received in settlement of their claims does not equal or exceed their legal entitlement."  See Reliance Nat'l Insurance Co., 430 F.3d at 416. In their status report, the Passenger Defendants and Winkelmann state that at some point, they "envision entering into a stipulation waiving their right to a trial so that this Court can decide if they have proven, in the aggregate, that they are legally entitled to the entire interpleaded fund."  It appears that we are now approaching that stage.  The Court recognizes that because there is a stayed appeal and there may be further appeals, the parties have an interest in advancing the case toward a final adjudication.

Ergo, the motion for partial summary judgment filed by Defendant Rita Winkelmann [d/e 300] is ALLOWED.  The proof of claim filed by

Great Lakes Aviation, Ltd. and Raytheon Aircraft Company [d/e 329] is DENIED.  The motion to strike filed by Great Lakes [d/e 344] is DENIED.

The parties are Directed to file by June 1, 2007, status reports suggesting a procedure to determine whether the Passenger Defendants and Winkelmann are entitled to the interpleader fund, and discussing any other relevant issues.

IT IS SO ORDERED.

ENTER: May 18, 2007

FOR THE COURT:

s/Richard Mills
United States District Judge

25